UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TED MCCLAIN, | : | |
| | : | Case No. 3:18-cv-00197 |
| Plaintiff, | : | |
| | : | Judge Thomas M. Rose |
| v. | : | |
| | : | |
| CAVALRY SPV I, LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | |

_____

**ENTRY AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (CONVERTED FROM A MOTION FOR JUDGMENT ON THE PLEADINGS) (DOC. 8) AND TERMINATING THE CASE**
_____

This case is before the Court on a motion for summary judgment by Defendants Cavalry SPV I, LLC ("Cavalry") and Levy & Associates, LLC ("Levy," and, collectively, "Defendants") (Doc. 8) that had been filed as a "Motion for Judgment on the Pleadings," but that Magistrate Judge Sharon L. Ovington converted to a motion for summary judgment (the "Motion") (*see* Doc. 18). This matter is fully briefed (Docs. 8, 12, 14, 20, 22) and ripe for review.

Plaintiff Ted McClain ("McClain") brings the same claims against both Defendants, arguing that he was damaged by their actions in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Count 1) and the Ohio Consumer Sales Practices Act ("CSPA"), O.R.C. § 1345.01 *et seq.* (Count 2). (Doc. 1.) For the reasons discussed below, the Court **GRANTS** summary judgment in favor of Defendants on the FDCPA claims, declines to exercise supplemental jurisdiction over the remaining state law claims, and **TERMINATES** this case.

1

I. **BACKGROUND**

On October 3, 2017, Levy—a law firm—filed a complaint on behalf of Cavalry against McClain in Ohio state court (Champaign County Municipal Court), captioned *Cavalry SPV I, LLC v. Ted McClain*, Case No. 17CVF00766 (the "State Court Case"). (Doc. 5-2 at PAGEID # 195-218.) Cavalry's complaint in the State Court Case alleged, among other things, that: (a) Cavalry is the assignee of McClain's Synchrony Bank "Care Card" account; (b) McClain used, or authorized the use of, the account; (c) McClain had received monthly periodic statements for the account; (d) McClain owed approximately $2,116.88 according to account statements attached to the State Court Case complaint; and, (e) McClain had been unjustly enriched by using the account without paying the amount that he owed. (*Id.* at PAGEID # 195-97.) The account statements attached to the State Court Case complaint all indicate a prior balance greater than zero. (*Id.* at PAGEID # 199-218.)

The parties engaged in discovery in the State Court Case, with Cavalry answering interrogatories, answering requests for admission, and producing documents. (*See, e.g.,* Docs. 5-3, 5-5.) The documents the Defendants produced in the State Court Case with their December 21, 2017 discovery responses included:

- account statements for a Synchrony Bank "Care Card" account in McClain's name (with the same address that McClain provided in his Complaint in this case);

- a Bill of Sale, signed by a Synchrony Bank representative, that indicates Synchrony Bank sold Cavalry certain accounts identified in "Notification Files" delivered by Synchrony Bank to Cavalry on November 20, 2016;

- a "Notification Files" document listing an account in McClain's name (with the same address that McClain provided in his Complaint in this case) and indicating a current balance for the account of $2,163.88 and a last payment date for the account of April 1, 2016;

- a letter dated November 30, 2016 from Synchrony Bank addressed to McClain (at the same address provided in his Complaint in this case), stating that "[t]his letter is to inform you that the above-referenced account was sold to Cavalry SPV I, LLC

2

on 11/20/2016.  If you have any questions about this account, please contact: Cavalry [at a specified address]"; and

- a letter dated November 30, 2016 from Cavalry addressed to McClain (at the same address provided in his Complaint in this case), stating, among other things, that "Cavalry SPV I, LLC purchased the Synchrony Bank/Care Credit account listed above and is now the creditor for the account," and indicating an outstanding balance of $2,163.88.

(Doc. 5-3.)  Documents the Defendants produced in the State Court Case with their May 17, 2018 discovery responses included many of those same documents, as well as an "Affidavit of Sale of Account By Original Creditor" executed by a Synchrony Bank employee.  (Doc. 5-5.)

On June 5, 2018, McClain filed his lawsuit in federal court (i.e., this case) claiming that Defendants violated the FDCPA and Ohio's CSPA.  (Doc. 1.)  His overarching argument is that "Defendants have pursued a claim in state court despite not having any evidence to demonstrate it can prove the alleged Account or all of the charges to the alleged Account from a zero balance." (*Id.* at ¶3.)  He alleges the following:

- Defendants filed a lawsuit against McClain without being able to establish the existence of the account;

- Defendants attempted—by false misrepresentation of the character, amount or legal status of an alleged debt—to collect on an alleged debt that it cannot prove Cavalry owns or is assigned;

- Defendants sued on an alleged account without proof of ownership of assignment;

- Defendants filed for an amount it cannot prove under Ohio law;

- Defendants sued for an amount not expressly authorized by the agreement creating the alleged debt;

- Defendants sued for an amount that it was not entitled to sue for because Cavalry lacks standing to sue; and

- Defendants threatened to take action, and took action, that they could not legally take.

(*Id*. at ¶¶ 67-92.)  McClain asserts that those alleged actions constitute violations of the FDCPA,

3

specifically 15 U.S.C. §§ 1692e(2)(A), 1692e(5), 1692e(1), and 1692f(1). (*Id*.) He also alleges that Defendants violated the FDCPA when they "failed to follow Ohio Collection Agency Law RC 1319.12(C), when [they] began litigation without taking a proper assignment." (*Id*. at ¶ 81.)

McClain further alleges that violations of the FDCPA also violate Ohio's CSPA (and the alleged violations are all based on the same facts). (*Id*. at ¶102.) Therefore, he asserts, Defendants' actions also violate O.R.C. §§ 1345.02 (as unfair or deceptive acts or practices) and 1345.03 (as unconscionable consumer sales acts or practices). (*Id.* at ¶¶ 103-04.)

In terms of the relief he seeks, McClain alleges that "[w]hen Cavalry commenced litigation against [him] it deprived him of precious time and resources for his severely ill son, causing material and devastating harm. The lawsuit has also caused economic losses in time spent away from [his] farm." (*Id*. at ¶12.) He seeks actual damages, statutory damages, attorney's fees, and costs, pursuant to provisions in the FDCPA and Ohio's CSPA. (*Id.* at PAGEID # 13.)

According to McClain, trial in the State Court Case started on June 23, 2018. (Doc. 20 at PAGEID # 400.) On July 5, 2018, Cavalry filed in the State Court Case a "Notice of Filing Additional Evidence," which included a "Business Records Affidavit" by Paola N. Medina (a Synchrony Bank Affidavit/Documentation Specialist), as well as approximately 127 pages of documents. (Doc. 5-1.) In his affidavit, Medina certifies that "Synchrony Bank opened the Account at the request of [McClain] on or about 06/10/2014; the Account was charged off on or about 10/31/2016; Synchrony Bank sold and assigned the Account to Cavalry SPV I LLC on about 11/20/2016; and at that time, there remained an unpaid balance of $2153.88 on the Account." (*Id.* at PAGEID # 66-67.) The approximately 127 pages of documents are account statements that Medina certifies are true and correct copies of original business records maintained by Synchrony Bank in the ordinary course of its regularly conducted business activity. (Doc. 5-1.)

According to McClain, the next day (July 6, 2018), Cavalry dismissed the State Court Case, without prejudice.[1]  (Doc. 20 at PAGEID # 401.)  McClain notes that Cavalry has not re-filed its State Court Case or its claims against McClain.  (Doc. 20 at PAGEID # 401.)

On October 19, 2018, Defendants filed their Amended Answer in this case (Doc. 5), then filed the Motion that is presently before this Court (Doc. 18).  McClain filed a Memorandum in Opposition to the Motion (Doc. 12), and Defendants filed a Reply in support of the Motion (Doc. 14).  Magistrate Judge Ovington then issued a "Decision and Entry" that converted the Motion from one for judgment on the pleadings to one for summary judgment.  (Doc. 18.)  McClain subsequently filed a "Memo Contra to Defendants' Motion for Summary Judgment" (Doc. 20), in response to which Defendants filed a "Reply in Support of Defendants' Motion for Summary Judgment" (Doc. 22).

## II.   LEGAL STANDARD ON SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either

---

[1] Although not material to the Motion, the Court notes that McClain argues that Defendants dismissed their State Court Case "when Mr. McClain challenged it."  (Doc. 12 at PAGEID # 366.)  Cavalry's discovery responses and the length of time in which the State Court Case was pending seem to belie that statement.   Although McClain cites an "Exhibit A" in support of his argument, he failed to attach any exhibit.  For their part, Defendants argue—likewise without submitting supporting evidence—that they "voluntarily dismissed the municipal court action once [McClain's] counsel communicated the difficult family circumstances experienced by [McClain].  The municipal court action was not dismissed for a lack of evidence but because Defendants became aware of [McClain's] family circumstances and financial hardship."  (Doc. 14 at PAGEID # 382.)  Throughout his Complaint and filings in this case, McClain details heartbreaking circumstances involving his child and his own medical needs.

5

party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (*quoting* Fed. R. Civ. P. 56(e)). Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id*.

In ruling on a motion for summary judgment, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving

6

party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). The Court relies on the Rule 56 evidence called to its attention by the parties. *See* Fed. R. Civ. P. 56(c), (e).

### III. ANALYSIS

"Congress enacted the FDCPA in order to eliminate 'the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.'" *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006), *quoting* 15 U.S.C. § 1692(a). "When interpreting the FDCPA, we begin with the language of the statute itself." *Harvey*, 453 F.3d at 329. As referenced above, McClain's federal claims are premised on alleged violations of 15 U.S.C. §§ 1692e(2)(A), 1692e(5), 1692e(1), and 1692f(1) of the FDCPA, which state the following:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> …
>
> (2) The false representation of – (A) the character, amount, or legal status of any debt …
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. …
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. …
>
> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. …

15 U.S.C. §§ 1692e(2)(A), 1692e(5), 1692e(1), and 1692f(1).

7

### A. Claim that Defendants Lacked Sufficient Proof in Filing the State Court Case

McClain claims that "Defendant[s] filed an action in state court without any evidentiary support," i.e., no proof to establish the claims in the State Court Case. (Doc. 12 at PAGEID # 365.) However, the Sixth Circuit has held that "a debt may be properly pursued in court, even if the debt collector does not yet possess adequate proof of its claim." *Harvey*, 453 F.3d at 333 (complaint failed to state cause of action under 15 U.S.C. § 1692e). In *Harvey*, the Sixth Circuit disagreed with the plaintiff's argument that "a lawsuit filed without the immediate means of proving the existence, amount, or true owner of the debt is deceptive" under the FDCPA. *Id. See also Perry v. Cavalry SPV I, LLC*, No. 18-10311, 2018 U.S. Dist. LEXIS 138442, at *15 (E.D. Mich. Aug. 16, 2018) (a challenge to the sufficiency of the proof accompanying defendants' state court debt collection suits could not support plaintiffs' FDCPA claim; "a claim that the debt-collection suits were not accompanied by any proof … is not actionable"); *Zachary v. Midland Funding, LLC*, No. 17-3972, 2018 U.S. Dist. LEXIS 120566, at *6 (E.D. Pa. July 18, 2018) ("as a matter of law, the commencement of a lawsuit without supporting evidence does not constitute the type of harassing, abusive, or dishonest conduct proscribed by the FDCPA").

McClain argues that his situation parallels that in *Taylor v. First Resolution Inv. Corp.*, 148 Ohio St. 3d 627, 2016-Ohio-3444, 72 N.E.3d 573 (Ohio 2016), *cert. denied*, 137 S. Ct. 398 (2016). He argues: "The *Taylor* plaintiff alleged that the creditors regularly maintained lawsuits such as the one against her as a regular collection practice to rake in default judgments. … The same applies here." (Doc. 12 at PAGEID # 369.) The Court disagrees. In his Memorandum in Opposition to the Motion, McClain asserted that "Defendant is in the business of using litigation as a means to collect on debts by default raking," allegedly a collection practice subject to the FDCPA. (*Id.* at PAGEID #365, 369-70.) However, not only is there no such allegation in the Complaint, McClain provides no evidence in support of that assertion—either generally or

8

specifically with respect to McClain and the State Court Case.

### B. Claim that Defendants Could Never Prevail in the State Court Case

Although much of McClain's Complaint involves his claims that Defendants filed the State Court Case without sufficient proof to establish their claims, McClain also claims that Defendants could never prevail in the State Court Case. (*See, e.g.,* Doc. 1 at ¶¶ 18 ("Defendant Cavalry … is unable to prove that it owns the alleged debt"), 73 ("Defendants made false representations when it threatened to take action, and took action that cannot legally be taken"), 91 (Defendants sued "Mr. McClain for an amount not expressly authorized by the agreement creating the alleged debt"). On that front, McClain essentially claims that Defendants filed a false collection lawsuit against him for a debt that either did not exist or that Cavalry did not own, in violation of the FDCPA. *See Perry*, 2018 U.S. Dist. LEXIS 138442, at *14 ("Plaintiffs' complaint here alleges both that Defendants failed to accompany their lawsuits with sufficient proof and that they lacked it altogether").

"In determining whether any particular conduct violates the FDCPA, the courts have used an objective test based on the least sophisticated consumer." *Harvey*, 453 F.3d at 329. "Courts have recognized claims under Section 1692(e) that are … based upon a debt collector's filing of a complaint to collect a debt and attaching an affidavit to the complaint that allegedly misrepresented the amount of the debt or the debt collector's legal claim upon the debt." *Delawder v. Platinum Fin. Servs. Corp.*, 443 F. Supp. 2d 942, 947 (S.D. Ohio 2005). Additionally, "[c]ourts have recognized claims under Section 1692f(1) where … a debt collector files a lawsuit seeking an amount allegedly greater than the amount owed under a debt agreement." *Id*. at 948. However, "for a lawsuit to violate the FDCPA, it must be *unlawful*." *Perry*, 2018 U.S. Dist. LEXIS 138442, at *20 (emphasis in original), *citing Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 535 (6th Cir. 2014) and *Heintz v. Jenkins*, 514 U.S. 291, 296 (1995) ("we do not see how the fact that a

9

lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an action that cannot legally be taken") (internal quotation marks omitted).

McClain makes a couple of related arguments. He argues that Cavalry could not prove the amount owed on the account or its ownership of the account. (Doc. 12 at PAGEID # 369; Doc. 20 at PAGEID # 406-409.) However, as shown in the Background section above, Defendants submitted evidence that refutes that argument. (*See* Docs. 5-1, 5-3, 5-4, 5-5.) McClain fails to set forth facts showing that there is a genuine issue for trial concerning his allegation.[2] Fed. R. Civ. P. 56; *Celotex Corp.*, 477 U.S. at 323-24; *Anderson*, 477 U.S. at 250. *See also Perry*, 2018 U.S. Dist. LEXIS 138442, at *22 (granting judgment on the pleadings for defendants on FDCPA claims where documents attached to complaint rebutted argument that no assignment of the debt to the defendant had occurred and where underlying state law debt collection suits included a bill of sale stating that the bank sold and assigned the accounts at issue to the defendants).

McClain also argues that Defendants lacked standing to bring the State Court Case because Cavalry failed to meet the requirements of O.R.C. § 1319.12(C), which puts limitations on when a "collection agency" may "commence litigation for the collection of" a debt. (*See* Doc. 1 at ¶ 81; Doc. 12 at PAGEID # 368-371; Doc. 20 at PAGEID # 398, 402-407.) Thus, according to McClain, Defendants violated the FDCPA's prohibition against threatening to take an action that cannot legally be taken, 15 U.S.C. § 1692e(5). (*Id.*) He alleges that Defendants "never provided any evidence of assignment or purchase of debt," so therefore they failed to meet the statute's requirements. (Doc. 1 at ¶81.) However, again, that allegation is directly contradicted by the

---

[2] McClain says that "[c]ourts are limited to the pleadings and may not consider materials outside the pleadings unless the document is one of public record or the document is both referred to in the pleadings and integral to the claims. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)." (Doc. 20 at PAGEID # 409.) That is incorrect at the summary judgment stage; *Jackson* involved a motion to dismiss, not a motion for summary judgment. *See Jackson*, 194 F.3d 737; Fed. R. Civ. P. 56. The *Stafford* and *Passa* cases that McClain also cites likewise involved Rule 12 motions, and therefore are inapplicable. McClain also relies on Ohio evidence law, which does not apply here to an action pending in federal court.

10

evidence discussed above, including Mr. Medina's affidavit and the Bill of Sale. (Doc. 5-1 at PAGEID # 65-67 ("Synchrony Bank sold and assigned the Account to Cavalry SPV I LLC on about 11/20/2016"); Doc. 5-3 at PAGEID # 267-71 (indicating that Synchrony Bank sold McClain's account to Cavalry on November 20, 2016.)

Delving more specifically into McClain's legal argument concerning O.R.C. § 1319.12, McClain asserts that "Defendants initiated litigation against Plaintiff on an account, without an assignment that complies with R.C. § 1319.12(C)." (Doc. 20 at PAGEID # 398.) He then argues that "[a] proper assignment that complies with R.C. § 1319.12(C) is absolutely necessary before a collection agency can initiate litigation on an account." (*Id*.) He relies on a sentence from a district court case (*Foster*) to support his argument: "A collection agency may file suit in its own name only when it has become the legal and equitable owner of the debt through an assignment that satisfies all of the requirements set forth in Ohio Revised Code § 1319.12." *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783, 804 (S.D. Ohio 2006).

There are at least a couple of problems with McClain's argument. First and foremost, it assumes that Cavalry is a "collection agency" under O.R.C. § 1319.12. It is not. Therefore, his entire argument falls apart. O.R.C. § 1319.12(A)(1) and (C) state:

> (A)(1) As used in this section, 'collection agency' means any person who, for compensation, contingent or otherwise, or for other valuable consideration, offers services to collect an alleged debt asserted to be owed to another.
>
> …
>
> (C) No collection agency shall commence litigation for the collection of an assigned account, bill, or other evidence of indebtedness unless it has taken the assignment in accordance with all of the following requirements: …

O.R.C. § 1319.12(A)(1), (C) (emphasis added). Under the plain language of the statute, a person who owns a debt outright is not offering "services to collect an alleged debt asserted to be owed to another." *Id*. Thus, a person who owns a debt outright is not a "collection agency" under the

statute and, therefore, is not subject to the requirements of O.R.C. § 1319.12(C).[3]

Not only does the plain language quoted above support this interpretation, but Ohio caselaw does as well. *See, e.g., Cavalry, Invs., L.L.C. v. Vonderheide*, 2001 Ohio App. LEXIS 5035, *2, 7-8 (Ohio Ct. App. Nov. 9, 2001) ("The plain language of the statute is that a purchaser of a debt does not fall under the R.C. 1319.12(A)(1) definition, because it is pursuing collection on its own behalf. We hold that, as a matter of law, Cavalry is not a collection agency as defined by the statute" because it purchased the debt and is attempting to collect the debt in its own name). This includes caselaw cited by McClain himself that directly counters his argument. *Equable Ascent Fin., LLC v. Ybarra*, 2013-Ohio-4283, 2013 Ohio App. LEXIS 4504, at *3-4 (Ohio Ct. App. 2013) (in contrast to the definition of "collection agency" under O.R.C. § 1319.12(A)(1), "a purchaser of a debt sues to collect the debt on its own behalf, not on the behalf of another. Therefore, a purchaser of a debt is not a collection agency under R.C. 1319.12(A)(1) and, thus, does not have to comply with the requirements in R.C. 1319.12.") (internal citations omitted).

To support his position, McClain first points to a letter where, he claims, Cavalry identifies itself as a "debtor [sic] collector seeking to recover an unpaid debt." (Doc. 20 at PAGEID # 403.) However, McClain provides no legal support for its apparent assumption that every debt collector constitutes a "collection agency" under O.R.C. § 1319.12(A)(1). Furthermore, the very first sentence of the letter says: "Cavalry SPV I, LLC purchased the Synchrony Bank/Care Credit account listed above and is now the creditor for the account." (Doc. 5-3 at PAGEID # 270.) McClain next points to Defendants' complaint in the State Court Case, arguing that "Defendants allege in their Complaint that they are seeking to recover or collect on a debt allegedly owed by

---

[3] The Court notes that the statement in *Foster* that McClain relies on (quoted above) confuses or conflates owning debt and an assignment. *Foster* cites only to the statute itself in support of the statement; it cites no other supporting law. *Foster*, 463 F. Supp. 2d at 804.

McClain" and that the complaint labeled Cavalry as the assignee of the account. (Doc. 20 at PAGEID # 403.) Even if such allegations were binding on Defendants, they are not contrary to Cavalry having purchased the debt (owning the debt) or otherwise demonstrate that Defendants constitute a "collection agency" under O.R.C. § 1319.12(A)(1). *See Perry*, 2018 U.S. Dist. LEXIS 138442, at *22 (granting judgment on the pleadings for defendants on FDCPA claims where underlying state law debt collection suits included a bill of sale stating that the bank sold and assigned the accounts at issue to the defendants). McClain also points to a Bill of Sale, complaining that it does not meet all of the requirements of O.R.C. § 1319.12(C). (Doc. 20 at PAGEID # 405-06.) However, the Bill of Sale did not need to meet those requirements because, again, those requirements are not applicable to Defendants given that Cavalry is not a "collection agency" in this instance.

Additionally, *Foster* is both factually distinguishable and not binding on this Court. The defendants in *Foster* (1) commenced state court lawsuits to collect debts when they did not have the legal capacity to do so because they did not properly register ownership in the factitious name of the entity used to collect debts, (2) included an impermissible standard request for attorneys' fees in its Ohio debt collection action complaints, and (3) presumed spousal liability in each complaint it filed against a debtor's spouse—even when the spouse did not have an obligation to pay those debts. *Foster*, 463 F. Supp. 2d at 800-03. More importantly, the defendants in *Foster* never argued that they purchased the debt; instead, they argued waiver and the bona fide error defense under 15 U.S.C. § 1692k(c). *Id*. at 803-04. The issue in *Foster* was not whether they owned the debt, but instead whether the assignment was sufficient. *Id*.

In sum, McClain simply fails to show that O.R.C. § 1319.12—and thus its requirements— applies to Defendants, and he fails to set forth facts that would establish a genuine issue of material

fact for trial. McClain does not show—and Defendants' evidence refutes—that the State Court Case was unlawful. There is no genuine issue as to any material fact on McClain's FDCPA claims, and Defendants are entitled to judgment as a matter of law on them.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** summary judgment for Defendants under Fed. R. Civ. P. 56 on the FDCPA claims made against them (First Count). The Court declines to exercise supplemental jurisdiction over McClain's remaining state law claims (Second Count), and therefore dismisses them without prejudice. 28 U.S.C. § 1367(c)(3). This case shall be **TERMINATED** on the Court's docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, September 17, 2019.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE